IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DARYLE WASHINGTON,

    Plaintiff,

v.

RECOLOGY SAN FRANCISCO,

    Defendant.

No. C 14-05083 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this employment-harassment action, defendant moves for summary judgment on all claims or, in the alternative, partial summary judgment. To the extent stated below, defendant's motion is **GRANTED IN PART AND DENIED IN PART**. Specifically, summary judgment is **DENIED** as to the claims that plaintiff did not voluntarily dismiss.

## STATEMENT

Since 2013, plaintiff Daryle Washington, an African American man, worked for defendant Recology San Francisco as a material handler. Recology offered waste-management and disposal services to homes and businesses. Plaintiff's job duties included sorting through garbage, recyclables, and construction waste by removing materials from sorting lines and sending them down designated chutes (Scott Decl. ¶ 6; Jamison Decl. ¶ 3; Damele Decl. ¶ 2).

On December 10, 2013, plaintiff saw a fellow material handler, Jon Peralta, who is Caucasian, remove a noose from the sorting line. He then saw Peralta place the noose on the backpack of another co-worker Greg Foster, who, like plaintiff, is African American

(Washington Decl. ¶ 2). As Peralta approached Foster's backpack, plaintiff witnessed him tighten the noose "as if he was putting it on someone's neck" (Washington Dep. at 147). Foster, who also witnessed the incident, saw Peralta walk away from his backpack laughing (Foster Decl. ¶ 1).

Plaintiff immediately filed a report to his supervisor, Rodney Berry, regarding this incident. After hearing what happened, Berry took Peralta off the sorting line and informed his own superior, Joseph Damele, of the incident (Washington Decl. ¶ 3; Damele Decl. ¶ 6).

The following day, December 11, Damele spoke with Peralta and suspended him without pay pending an investigation. Damele also spoke with Foster and plaintiff to further understand what happened the day before and informed them that Recology had begun investigating this matter. Varessa Scott, the human resources manager, led the investigation (Damele Decl., ¶ 9, Exh. A at 6; Scott Decl. ¶ 10).

The morning after the incident, Scott spoke with plaintiff regarding the incident and advised him that Recology took matters such as this seriously. Next, Scott interviewed Foster, who stated that he felt upset with Peralta, but that he had not had any previous altercations with Peralta. Scott also interviewed Peralta, who informed her that the workers regularly joked around with each other on the sorting line and that he did not intend to offend Foster. Peralta acknowledged his mistake to Scott and apologized to Foster (Scott Decl. ¶¶ 12, 14; Foster Decl. ¶ 3).

Damele allowed Foster to take paid time off as needed to recover from any discomfort caused by the incident — Foster took four days off (Scott Decl. ¶ 13).

Following Scott's investigation, Damele ultimately decided to suspend Peralta for five days without pay. In making this decision, Damele considered the seriousness of Peralta's actions, the fact that he had no prior disciplinary history, and the terms of Recology's collective bargaining agreement with Peralta's union (*id.* at ¶ 15; Damele Decl. ¶ 10).

On December 13, Damele met with the employees who worked on the same shift as Peralta. Damele emphasized Recology's "zero tolerance for harassment" and reviewed ways employees could bring concerns to his attention and to the attention of the human resources

1    department (Damele Decl. ¶ 11). Recology's policy on harassment stated that any employee
2    "engaged in prohibited harassment is subject to disciplinary action, up to and including
3    termination of employment" (Jamison Decl., Exh. B at 30). Damele also informed employees
4    that Peralta had been suspended. Plaintiff did not attend the meeting, but Damele later saw
5    plaintiff in the break room and repeated to him the same information about Peralta's suspension
6    (Damele Decl. ¶ 11).

7    When Peralta returned from suspension, he was assigned to a position on the sorting line
8    right next to plaintiff. This change made plaintiff uncomfortable, so he requested to be moved
9    to another location away from Peralta. One of plaintiff's managers (the identity of this manager
10   is not stated in the record) informed plaintiff that nothing could be done about Peralta's
11   assignment at that time. Plaintiff claims he began to have trouble falling asleep and started
12   feeling depressed as a result of working directly next to Peralta (Washington Decl. ¶¶ 5–9).

13   On January 3, Peralta removed a copy of *Jet* — a "magazine designated toward
14   African American patrons" — from the sorting line and "tossed" it between Foster and another
15   co-worker David Denson (Scott Decl. ¶ 16). Plaintiff did not witness this incident himself.
16   He only became aware it had occurred later that day (Damele Decl., Exh. B at 8; Washington
17   Dep. at 202).

18   On January 7, Denson reported the magazine incident to Damele, who in turn escalated
19   the complaint to Scott. On January 13, Damele arranged to suspend Peralta without pay
20   pending Scott's investigation. Scott then began another investigation. It appeared to Scott that
21   Peralta did not understand the gravity of his actions. Damele reaffirmed Scott's opinion and
22   ultimately decided to suspend Peralta without pay again (Damele Decl., ¶ 12, Exh. B at 8; Scott
23   Decl. ¶¶ 16–17).

24   On January 23, a meeting occurred between Damele, Scott, union representatives, and
25   Peralta to review a grievance filed by Peralta's union concerning his suspensions. Damele
26   refused to reconsider Peralta's suspension. The parties agreed to suspended Peralta for eleven
27   days without pay. Recology also required Peralta to make a public apology to his co-workers
28   and to attend sensitivity training through Recology's employee-assistance program. In addition,

1  Recology formally warned Peralta that "any other such occurrence during [his] employment
2  with Recology [would] result in immediate termination of [his] employment" (Damele Decl.,
3  Exh. D at 13). Recology reinstated Peralta's employment on January 28, 2014. Since then,
4  Peralta has not been the subject of any further complaints or disciplinary actions (Scott Decl. ¶¶
5  18–20; Damele Decl. ¶ 14; Foster Decl. ¶ 6).

6  In January 2014, plaintiff suffered a workplace injury. To accommodate plaintiff's
7  injury he was reassigned to a different area of the facility, with a different shift time, and
8  physically apart from Peralta. From March 2014 through June 2014, plaintiff took time off due
9  to his reported injury. Plaintiff resumed his work in June 2014, but Recology allowed him to
10 work in a different assignment away from Peralta in light of his stated discomfort around
11 Peralta. Plaintiff has been absent from work continuously due to his reported injury since
12 September 2014 (Scott Decl. ¶¶ 22–24).

13 In November 2014, plaintiff commenced this action claiming: (1) racial harassment
14 in violation of the California Fair Employment and Housing Act, (2) failure to prevent racial
15 harassment in violation of the California Fair Employment and Housing Act, (3) racial
16 harassment in violation of Title VII of the Civil Rights Act of 1964, (4) failure to prevent
17 harassment in violation of Title VII of the Civil Rights Act of 1964, (5) negligence, and
18 (6) breach of the covenant of good faith and fair dealing. Plaintiff also sought compensatory
19 and punitive damages. Recology now moves for summary judgment on all claims. In
20 plaintiff's brief in opposition to Recology's motion, he abandoned his second, fourth, fifth, and
21 sixth claims along with his claim for punitive damages (Pl.'s Opp. at 10). Accordingly,
22 Recology's motion for summary judgment as to those claims is **GRANTED**. The only remaining
23 claims are based on racial harassment in the form of a hostile work environment under FEHA
24 and Title VII.

25 This order follows full briefing and oral argument.

## ANALYSIS

27 Plaintiff asserts racial-harassment claims under both Title VII of the Civil Rights Act of
28 1964 and the California Fair Employment and Housing Act. "The analysis under FEHA is

4

identical to that under Title VII." *Davis v. California Dept. of Corrections and Rehab.*, 484 Fed. Appx. 124, 128 n.3 (9th Cir. 2012) (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000); *Beyda v. City of Los Angeles*, 65 Cal. App. 4th 511, 516–17 (1998)).

An employer is liable for conduct giving rise to a hostile work environment if the employee can show: (1) he was subjected to verbal or physical conduct of a harassing nature, (2) that the conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an intimidating, hostile, offensive, or abusive working environment. *See Pavon v. Swift Transportation Co.*, 192 F.3d 902, 908 (9th Cir. 1999). A plaintiff must show that his working environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

"[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). Factors that may be considered "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 872 (9th Cir. 2001).

Here, plaintiff's claim arises out of three instances of unwelcome conduct to support his claim of a hostile work environment: (1) On December 10, 2013, Peralta, a Caucasian employee, took an already-tied noose off the sorting line and placed it on another African American co-worker's backpack, (2) upon his return, Recology assigned Peralta to work directly alongside our plaintiff, even though plaintiff told his supervisor he was disturbed by

5

1  Peralta's conduct, and (3) on January 3, 2014, plaintiff heard that Peralta tossed a copy of *Jet*
2  magazine from the sorting line and "tossed" it between two other co-workers.[1]
3      Peralta had no prior disciplinary history and he had no prior problems with Foster (or
4  any other African American employee). Since January 2014, Peralta has not engaged in any
5  inappropriate workplace behavior (Damele Decl. ¶ 10; Scott Decl. ¶ 20; Foster Decl. ¶ 6).
6  Plaintiff has not presented any evidence of other conduct anywhere at Recology that could give
7  rise to a hostile work environment.
8      Nevertheless, the noose is one of the most vile symbols in American history, and it
9  recalls atrocious acts of violence committed against African Americans. The severity of the
10 hostility inherent in a display of a noose cannot be overstated. Our court of appeals has not
11 addressed the objective severity of a display of a noose, however, in *Vance v. S. Bell Tel. & Tel.*
12 *Co.*, 863 F.2d 1503, 1510 (11th Cir. 1989), the Eleventh Circuit held that two incidents
13 involving a noose placed directly above the plaintiff's work station along with an allegedly
14 racially-charged disciplinary event and a verbal altercation with a co-worker constituted
15 sufficiently severe conduct to present a jury question, reversing the district court's grant of
16 judgment notwithstanding the verdict. Our court of appeals has cited *Vance* twice, each time as
17 an example of conduct showing sufficient severity and pervasiveness to survive summary
18 judgment. *See Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991); *Woods v. Graphic*
19 *Communications*, 925 F.2d 1195, 1201 (9th Cir. 1991).
20     On the other hand, *Henry v. Regents of the University of California*, 37 F. Supp. 3d 1067
21 (N.D. Cal. Feb. 24, 2014) (Chief Judge Phyllis Hamilton) *appeal docketed*, No. 14-15386
22 (9th Cir.), addressed a single incident involving a noose taken together with a supervisor's
23 statement that the department was "not going to let a black man manage anybody." That
24 decision noted:

> The Ninth Circuit has held that "[i]f a single incident can ever
> suffice to support a hostile work environment claim, the incident

---

[1] Recology points out that plaintiff did not personally witness this event and the he has not disclosed any witness that can personally testify to this occurrence. Nevertheless, this order will not rule out the possibility that plaintiff may be able to elicit admissible evidence of this second occurrence through cross examination of Recology's witnesses.

6

> must be extremely severe," and a California court of appeals [sic] has similarly held, in a FEHA harassment case, that an incident "must be severe in the extreme and generally must include either physical violence or the threat thereof."

*Id.* at 1086 (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir.2000); *Herberg v. California Institute of the Arts*, 101 Cal. App. 4th 142, 151 (2002)). Because the plaintiff had failed to provide evidence that the noose served as a threat of violence to him specifically (the noose was taped to a box in a warehouse, not near the plaintiff's work station), *Henry* held the incident was not sufficiently severe to survive summary judgment.

*Henry* specifically distinguished *Wilson v. New York City Department of Transportation*, 01-7398, 2005 WL 2385866, at *1 (S.D.N.Y. Sept. 28, 2005) (Judge Beryl A. Howell), and *Smith v. Town of Hempstead Department of Sanitation*, 798 F. Supp. 2d 443 (E.D.N.Y 2011) (Judge Arthur D. Spatt), each of which denied summary judgment for the defendants for claims relating to a single incident involving a noose. Both decisions, *Henry* noted, involved nooses directed at the plaintiffs therein or at African-Americans as a whole. In *Wilson*, the noose in question hung outside the plaintiff's locker, and in *Smith*, the noose hung in a central garage where all African American employees would pass. An appeal of the *Henry* decision is currently pending.

It is true that Peralta did not display the noose in a manner specifically directed at our plaintiff but instead placed the noose on Foster's belongings. Nevertheless, plaintiff saw Peralta place the noose on Foster's belongings, and saw him tighten it as if around someone's neck. A jury may find that by directing a noose at a specific individual, Peralta communicated a threat of violence to all African Americans in the workplace, including our plaintiff. Such a threat of violence, particularly in light of the fact that Peralta resumed racially insensitive conduct immediately after returning to work (albeit out of plaintiff's presence) and the fact that Peralta worked immediately next to our plaintiff upon his return, could have unreasonably interfered with a reasonable African American man's work performance. *See Harris*, 510 U.S. at 23. A jury must decide.

Recology argues that even if a jury could conclude that a hostile work environment existed, it cannot be held liable because it responded appropriately by taking prompt action to

7

discipline Peralta and remedy the situation, and in fact Peralta's harassing conduct ceased after his second suspension. Nevertheless, in considering an employer's response to a hostile work environment "we consider the overall picture." *Swenson v. Potter*, 271 F.3d 1184, 1197 (9th Cir. 2001). Recology's response may have ultimately been effective, but a jury could also conclude that by placing Peralta directly adjacent to plaintiff on the sorting line just a week after the noose incident, Recology exacerbated the hostility that Peralta had already injected into the workplace. Indeed, our court of appeals has held:

> [I]n some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment. To avoid liability under Title VII for failing to remedy a hostile work environment, employers may even have to remove employees form the workplace if their mere presence would render the working environment hostile.

*Ellison*, 924 F.2d at 883. At oral argument, counsel for Recology argued that union rules dictated Peralta's assignment, so this exacerbation was inevitable, however, Recology points to no evidence in the record to support that position. A jury must determine whether Peralta's mere presence, particularly his immediate proximity to plaintiff, following the noose incident combined with the *Jet* incident would have rendered the working environment hostile from the perspective of a reasonable African American.

## CONCLUSION

To the extent stated above, Recology San Francisco's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. A jury trial is necessary to resolve plaintiff's hostile work environment claims. Plaintiff has voluntarily dismissed all other claims.

**IT IS SO ORDERED.**

Dated: December 22, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE